Filed 8/18/20  Schwab v. Steiner CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHARLES R. SCHWAB, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LEONARD STEINER et al., <br><br> Defendants and Appellants. | B289983 <br><br> (Los Angeles County Super. Ct. No. BC574505) |
| MICHAEL B. SCHWAB, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LEONARD STEINER et al., <br><br> Defendants and Appellants. | B290001 <br><br> (Los Angeles County Super. Ct. No. BC573709) |

APPEALS from orders of the Superior Court of Los Angeles County, John P. Doyle, Judge.  Affirmed.

Gordon Rees Scully Mansukhani, Craig J. Mariam, Christina M. Vander Werf, and Raymond J. Muro for Defendants and Appellants Leonard Steiner and Steiner & Libo, P.C.

Litvak Law Group, Uri Litvak and S. Martin Keleti for Defendant and Appellant Nicholas Behunin.

Allen Matkins Leck Gamble Mallory & Natsis, Robert R. Moore, Michael J. Betz, and Alexander J. Doherty for Plaintiff and Respondent Charles R. Schwab.

Law Offices of David H. Schwartz, David H. Schwartz and Nancy Chung; Law Offices of Michael Stepanian and Michael Stepanian for Plaintiff and Respondent Michael B. Schwab.

———————————————

## INTRODUCTION

Charles Schwab and his son Michael Schwab each filed a defamation action against attorney Leonard Steiner, his law firm Steiner & Libo, P.C. (collectively, the Steiner defendants), and the Steiner defendants' client, Steve Behunin. In both cases the defendants filed special motions to strike under Code of Civil Procedure section 425.16,[1] and they now appeal from the trial court's orders denying the motions. Because the allegations in the Schwabs' actions do not arise from activity protected by the statute, we affirm.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *Behunin Files an Action Against the Schwabs and Creates a Website To Induce Them To Settle*

In 2014 Behunin, represented by Steiner, filed an action against Charles and Michael over a dispute that arose after Behunin and the Schwabs pursued several related business ventures together, including developing and investing in real estate in Indonesia. Behunin asserted various causes of action, including fraud and breach of contract, based on allegations the Schwabs did not fulfill promises to fund the real estate venture. Behunin also described in his complaint details of the Schwabs' alleged personal relationships with members of the family of former Indonesian president Suharto.

After filing the action, Behunin, through Steiner, hired a public relations firm, Levick Strategic Communications, to create a social media campaign to induce the Schwabs to settle the case. As part of the campaign, Levick created a website, www.chuck-you.com, whose content linked the Schwabs to corruption, human rights violations, and atrocities associated with President Suharto and his family. As a senior vice president at Levick described the firm's task in a letter to Steiner and Behunin, "Per our discussion with your client, Nicholas Behunin, [Levick's] goal will be to develop and deploy strategy and tactics of Mr. Behunin's legal complaint." Levick referred to the project as the "Chuck You Campaign."

B.    *The Schwabs File Defamation Actions Against Behunin and the Steiner Defendants*

Upon learning of the website, Charles Schwab filed a libel action against Behunin and the Steiner defendants.  Describing himself as "a well-known and widely-respected business leader and investor and . . . the Chairman and founder of the Charles Schwab Corporation, a brokerage and banking company," Charles alleged Behunin and Steiner created and published the chuck-you.com website in an attempt to smear his reputation "by falsely associating him with the misconduct committed by one of the most brutal and corrupt dictators of the 20th century, former Indonesian President Suharto."  Charles alleged Behunin and Steiner's objective was "to publicly embarrass and shame [him] and then to leverage that public embarrassment into litigation advantage in Behunin's lawsuit against [the Schwabs]."

More specifically, Charles alleged that he is informally known as Chuck, that the name of the website is a play on the words "fuck you," and that the website "stole the design and format of Charles Schwab & Co., Inc.'s investment services website 'www.schwab.com' and then replaced its content with numerous false, misleading, and libelous statements about" Charles.  The allegedly libelous statements Charles cited were "Looking to launder money overseas?  Chuck can help!"; "Looking to profit from a brutal dictator?  Ask Chuck"; Charles was an "international plunderer" and engaged in "exploitation abroad"; "According to a complaint filed by a Schwab family insider, Charles and [his wife] used their Foundation to indirectly fund investment deals with the Suharto family"; "Charles Schwab and the Suharto family purportedly acted as anchor investors in a joint land investment venture known as the Emergent Indonesia

4

Opportunity Fund, with each investing $35 and $30 million, respectively"; and "As reported by the LA Business Journal, Charles Schwab and his heir, Michael Schwab, purportedly worked on an investment deal with Tommy Suharto, son of the brutal Indonesian dictator, over land in Bali obtained through military force during his father's presidency."[2]  Charles also alleged the website displayed "gory photos . . . from Indonesia's past" and "embedded videos relating to Suharto's misconduct juxtaposed with videos of [Charles]" that falsely connected him to "Suharto's crimes."

Similarly, but in a separate action, Michael Schwab sued Behunin and the Steiner defendants for libel, slander, and invasion of privacy (false light) based on statements made on the chuck-you.com website.  The statements Michael cited were "Michael came to know Tommy Suharto, son of the late Indonesian President Suharto[, who] made an art of manipulating the powers of the Indonesian government to enrich his family"; "Michael Schwab purportedly worked on an investment deal with Tommy Suharto, son of the brutal Indonesian dictator, over land in Bali obtained through military force during his father's presidency"; and "Suharto's grandson Panji Adhikumoro Suharto is a business advisor to the Western Mining Network, in which . . . Michael Schwab acquired a 15%

---

[2]     Regarding the statements about his and his wife's foundation, the Emergent Indonesia Opportunity Fund, and Charles and Michael's supposed investment deal with Tommy Suharto, Charles alleged that "the Website framed these statements as if it were simply reporting the accusations of some presumably credible third party—when in fact the accusations were from Steiner himself and/or his client" because their source was the complaint in Behunin's action against the Schwabs.

5

stake." Michael alleged the website included "gory photos and images from Indonesia's tragic history" that "falsely associat[ed] him with Suharto's crimes," such as an image of a "dead or dying Indonesian covered in blood hang[ing] from a noose while another is about to slam him over the head with a chair" as a "lynch mob looks on, many of them smiling," and an "image of a man who appears to be Indonesian holding a rifle in one hand and giving the 'thumbs up' with his other hand."

In addition, Michael alleged that Behunin and Steiner provided "false and defamatory information to third parties who would post articles or blogs on the Internet repeating the false and defamatory statements" and that Behunin and Steiner then placed links on the chuck-you.com website that would take visitors to those articles and blogs, "creating the impression that the false statements on the Website had been independently corroborated by the third-party posters." One such third-party poster, according to Michael, was Bruce Fein, "who writes a blog that is available through the HuffingtonPost website." Michael alleged Fein posted a number of defamatory statements on this blog, including "At some point in time, [Charles] Schwab's son Michael came to know Tommy Suharto, son of the late Indonesian President Suharto"; "Michael Schwab . . . was apparently thrilled at the prospect of collaborating with Tommy [Suharto] to develop environmentally friendly upscale resorts on Bali. To implement that collaboration, Michael formed a tax exempt charity named Seathos, Inc. under section 501(c)(3) of the Internal Revenue Code"; "Tax exempt Seathos has become a joint investor in an L.L.C.—Sealutions—along with Charles and Michael Schwab and arch-knave Tommy Suharto"; "A portion of Sealutions profits would inure to Seathos"; and "Seathos'

6

collaboration with Tommy . . . would seem to contrary . . . to the public policy of the United States against money laundering . . . ."

C. *Behunin and the Steiner Defendants File Special Motions To Strike Under Section 425.16*

In both Charles's and Michael's actions, which the trial court related, Behunin and the Steiner defendants filed separate special motions to strike under section 425.16. After granting Charles and Michael leave to conduct limited discovery under section 425.16, subdivision (g),[3] the trial court heard the four special motions to strike and denied them. The court ruled that, because the defendants failed to establish that Charles's and Michael's actions arose out of activity protected by the statute, the defendants did not carry their burden on the first step of the analysis under section 425.16. The court rejected the defendants' arguments the allegedly defamatory statements were made before a judicial proceeding (§ 425.16, subd. (e)(1)), made in connection with an issue under review by a judicial body (§ 425.16, subd. (e)(2)), or made in a public forum in connection with an issue of public interest (§ 425.16, subds. (e)(3), (e)(4)). Behunin and the Steiner defendants timely appealed.

---

[3] After the trial court overruled objections by Behunin and the Steiner defendants to discovery requests for communications among Behunin, Steiner, and Levick relating to the creation of the chuck-you.com website, Behunin filed a petition for writ of mandate to vacate that ruling, which we denied on the merits. (*Behunin v. Superior Court* (2017) 9 Cal.App.5th 833.)

7

## DISCUSSION

A. *Applicable Law and Standard of Review*

Section 425.16, subdivision (b)(1), provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Courts evaluate special motions to strike under section 425.16 "through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) We review the trial court's order granting or denying a special motion to strike under section 425.16 de novo. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) "We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based." (*Park*, at p. 1067.)

8

B. *Charles's and Michael's Actions Do Not Arise from Protected Activity*

Behunin and the Steiner defendants contend Charles's and Michael's actions arise from protected activity because the website and blog statements Charles and Michael allege as the basis for their causes of action come within section 425.16, subdivision (e)(3) or (e)(4). As relevant here, subdivision (e)(3) protects any written statement "made in . . . a public forum in connection with an issue of public interest," and subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest." Under either subdivision of section 425.16, then, Behunin and the Steiner defendants must establish the statements on which Charles and Michael base their actions were made in connection with a public issue or an issue of public interest.[4]

In *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn.com*) the Supreme Court addressed how the context of a statement "should feature" in deciding whether a statement "furthers the exercise of constitutional speech rights in connection with a matter of public interest." (*Id.* at p. 149.) The

[4]     Although section 425.16, subdivision (e)(4), refers to "a public issue" and "an issue of public interest" disjunctively, the parties use these phrases interchangeably, and there appears to be no substantive difference between them. (See *Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 659 [applying the same standard to ""'the public issue/issue of public interest requirement of section 425.16, subdivision (e)(3) and (4)'""]; *Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 [same].)

9

Supreme Court held: "The inquiry . . . calls for a two-part analysis rooted in the statute's purpose and internal logic. First, we ask what 'public issue or [ ] issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech." (*Ibid.*) "In articulating what constitutes a matter of public interest," we look to considerations "such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' [citation]; and whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion' [citation] or 'affect[ed] a community in a manner similar to that of a governmental entity.'" (*Id.* at pp. 145-146.)

"Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn.com*, *supra*, 7 Cal.5th at pp. 149-150.) "'[I]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.'" (*Id.* at p. 150; see *id.* at p. 151 ["a statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue"]; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 [section 425.16, subdivisions (e)(3) and (e)(4), "are limited by the requirement that the statement or conduct be connected with an issue of public interest—a limitation that, among other things, means that in many cases the statement or conduct will be a part of a public debate and the public therefore will be exposed to varying viewpoints on the issue"].) And "the inquiry of whether a statement contributes to the public debate is one a court can

10

hardly undertake without incorporating considerations of context—including audience, speaker, and purpose." (*FilmOn.com*, at pp. 151-152.)

As Behunin and the Steiner defendants repeatedly state, we must construe section 425.16 "broadly" to effectuate its purpose. (§ 425.16, subd. (a).) And we do so here, keeping in mind the Supreme Court's instruction that, "[b]ecause our 'primary goal is to determine and give effect to the underlying purpose of' the . . . statute," attention to "context matters." (*FilmOn.com*, *supra*, 7 Cal.5th at p. 154.) "It allows courts to liberally extend the protection of the . . . statute where doing so would 'encourage continued participation in matters of public significance,' but withhold that protection otherwise." (*Ibid.*)

1. *The Statements Charles Alleged Were Libelous Were Not Made in Connection with an Issue of Public Interest*

Behunin and the Steiner defendants argue the allegedly libelous statements in Charles's action were made in connection with an issue of public interest within the meaning of section 425.16, subdivision (e)(4),[5] because the statements (a) "relate to a businessman and owner of a financial institution who extensively promotes himself publicly," (b) "relate to the financial world, a topic in which there is a 'profound public interest,'" and (c) "question the trustworthiness of business owners with whom the public entrusts its money." These arguments do not hold up

---

[5] Behunin and the Steiner defendants do not argue the allegedly libelous statements in Charles's action were made "in a public forum," as required by section 425.16, subdivision (e)(3).

11

under the two-part analysis prescribed by *FilmOn.com*, *supra*, 7 Cal.5th at pages 149 to 151.[6]

### a. *The Content of the Statements Did Not Implicate a Public Issue*

Although a statement may implicate a public issue because its subject is a person or entity "in the public eye" (*FilmOn.com*, *supra*, 7 Cal.5th at pp. 145-146; see *Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1254), not every statement about a person in the public eye implicates a public issue (see *Albanese v. Menounos* (2013) 218 Cal.App.4th 923, 934 [rejecting the argument "that any statement about a person in the public eye is sufficient to meet the public interest requirement"]; *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190, 1226 ["[n]o authority supports the . . . broad proposition that anything said or written about a public figure or limited public figure in a public forum involves a public issue"]). Behunin and the Steiner defendants purport to cite evidence suggesting Charles is in the public eye because he is widely recognized as the eponymous founder and chairman of the Charles Schwab Corporation.[7] But the allegedly libelous

---

[6]    The Supreme Court has granted review in *Geiser v. Kuhns* (Feb. 28, 2020, B279838) [nonpub. opn.], review granted July 22, 2020, S262032, to decide the following issues: How should it be determined what public issue or issue of public interest is implicated by speech within the meaning of section 415.16, subdivision (e)(4), and the first step of the two-part test articulated in *FilmOn.com*, *supra*, 7 Cal.5th at pp. 149-150, and should deference be granted to a defendant's framing of the public interest issue at this step?

[7]    Behunin and the Steiner defendants cite a page of Charles's declaration in support of his opposition to the special

12

statements on the chuck-you.com website do not mention the Charles Schwab Corporation or any activity by Charles in connection with it; rather, they concern Charles's personal relationships and his investment activity unconnected with the Charles Schwab Corporation. Behunin and the Steiner defendants cite no evidence suggesting the public has any interest in the latter aspects of Charles's life.[8] (Cf. *Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1042 ["'an issue of public interest' within the meaning of section 425.16 . . . 'is any issue in which the public is interested,'" italics omitted).

Moreover, assuming "the financial world" and "the trustworthiness of business owners" are issues of public interest,

motions to strike, where Charles stated: "I am the founder and chairman of The Charles Schwab Corporation. The Charles Schwab Corporation is in the business of providing securities, banking, and financial advisory services in the U.S. and elsewhere. I have led a successful career in the investment industry for more than 50 years." Otherwise, Behunin and the Steiner defendants cite pages in the record that appear wholly irrelevant or that do not constitute evidence (e.g., argument in a memorandum of points and authorities).

[8] That distinguishes this case from *Nygård, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, on which Behunin and the Steiner defendants rely heavily. In that case the court concluded that a statement in a Finnish magazine about the private residence of Peter Nygård, "'a prominent businessman and celebrity of Finnish extraction,'" concerned a public issue because there was evidence of "'extensive interest' in Nygård . . . among the Finnish public," including evidence of a "particular interest among the magazine's readership in 'information having to do with Mr. Nygård's famous Bahamas residence which has been the subject of much publicity in Finland." (*Id.* at p. 1042.)

13

they are too abstractly and tangentially related to the specific content of the allegedly libelous statements here. "It is true enough that the various actions of a prominent CEO . . . —in the abstract—seem to qualify as issues of public interest," but "the focus of our inquiry must be on 'the specific nature of the speech,' rather than on any 'generalities that might be abstracted from it.' [Citation.] Defendants cannot merely offer a 'synecdoche theory' of public interest, defining their narrow dispute by its slight reference to the broader public issue." (*FilmOn.com*, *supra*, 7 Cal.5th at p. 152; see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 625 ["At a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance."]; *Price v. Operating Engineers Local Union No. 3* (2011) 195 Cal.App.4th 962, 972 (*Price*) ["'there should be some degree of closeness between the challenged statements and the asserted public interest [citation]; the assertion of a broad and amorphous public interest is not sufficient'"]; *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 [courts have rejected "what might be called the synecdoche theory of public issue," in which "the part is [assumed] synonymous with the greater whole"]; *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 601 [if "we should examine the nature of the speech in terms of generalities instead of specifics, then nearly any claim could be sufficiently abstracted to fall within" section 425.16].) The statements Charles claims were libelous were not about "the financial world" as a whole or "the trustworthiness of business owners" in general, but about the relationships and activities of a particular business owner in the financial world. (See *Bernstein v. LaBeouf* (2019) 43

14

Cal.App.5th 15, 24 ["While racism is undoubtedly an issue of public interest, a defendant cannot convert speech that would otherwise not be [subject to section 425.16] into protected activity by 'defining the[ ] narrow dispute by its slight reference to the broader public issue.'"]; *Commonwealth Energy*, at p. 34 [speech at issue was about a particular company's investment investigation services, "not about investment scams in general"]; *Consumer Justice Center,* at p. 601 [advertising claims for herbal supplement promising breast enlargement were not about "herbal supplements in general," but "the specific properties and efficacy of a particular product"].)

Behunin and the Steiner defendants cite *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, a case decided seven years before *FilmOn.com.* In *Summit Bank* the court, in determining the challenged speech implicated a public issue, suggested there was a public interest in "the financial world." (*Summit Bank*, at p. 694.) Behunin and the Steiner defendants' reliance on *Summit Bank*, however, is misplaced. First, *Summit Bank* is distinguishable because of the specific nature of the speech in that case: statements questioning a large bank's "financial stability and its management decisions." (*Id.* at p. 694.) Such statements about a financial institution more directly concern the broader subject of "the financial world" than do statements about the personal relationships and private activities of an individual, even if that individual is prominent in the financial world. Second, the court in *Summit Bank* did not hold that the public has an interest in any and all aspects of "the financial world." As the court explained: "[I]n the wake of the 2008 economic downturn, which ushered in widespread skepticism in the underlying financial strength of our country's financial

15

institutions, there has been a profound public interest in the financial world, and a heightened interest in private banks. [Citation.] In light of the recent financial meltdown of some of our country's largest and most trusted financial institutions, the financial stability of our banking system is a legitimate object of constitutionally protected public commentary, discussion, criticism, and opinion." (*Ibid*.) The statements in this case do not relate to those aspects of "the financial world"—e.g., the "stability of our banking system"—that the court in *Summit Bank* identified as a matter of public interest.

Finally, the other relevant considerations identified by the Supreme Court in *FilmOn.com* weigh against concluding the speech at issue here implicated an issue of public interest. Behunin and the Steiner defendants offer no evidence or argument their allegedly libelous statements described matters likely to affect large numbers of people beyond the direct participants, occurred in the context of an ongoing controversy, or affected a community in a manner similar to that of a governmental entity. (See *FilmOn.com*, *supra*, 7 Cal.5th at pp. 145-146.)

### b. *The Statements Did Not Contribute to Public Debate*

Even if Behunin and the Steiner defendants had succeeded in identifying a public issue implicated by their statements, they failed to address, let alone meet their burden under, the second part of the *FilmOn.com* analysis: whether the statements, in context, contributed to the public debate on the issue they supposedly implicate. (*FilmOn.com*, *supra*, 7 Cal.5th at pp. 149-150; see *id.* at p. 151 ["we examine whether a

16

defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest"].) Again, Behunin and the Steiner defendants have not identified any relevant public debate. But if even there were one, the allegedly libelous statements did not meaningfully contribute to it. In fact, as Behunin and the Steiner defendants argue elsewhere in their briefs, given the fancifully crude address and overall tone of the website, "[a]n average reader would not interpret these statements as containing actual facts," but would instead understand them to be "nothing more than imaginative expressions of contempt."

That the statements appeared on a publicly accessible website does not, without more, mean they contributed to a public debate. (See *Bernstein v. LaBeouf*, *supra*, 43 Cal.App.5th at p. 24 ["a private dispute does not become a matter of public interest simply because it was widely communicated to the public"]; *Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 481 ["Mere publication on a Web site does not turn otherwise private information into a matter of public interest."].) Nor did the statements appear in any Internet forum for consumer information or review, which distinguishes the statements here from those in two other cases Behunin and the Steiner defendants rely on, *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138 and *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.* (N.D.Cal. 2013) 946 F.Supp.2d 957. (See *Chaker*, at pp. 1142, 1146 [statements about a business owner's character and business practices were posted on the "Ripoff Report," an "Internet Web site where members of the public may comment on the reliability and honesty of various providers of goods and services"]; *Piping Rock*, at pp. 965-966 [derogatory statements

17

about a business owner's business practices were posted on "Ripoff Reports" and various other "consumer-report websites"].)

Finally, communications among Behunin, Steiner, and Levick make evident that the focus and purpose of the campaign of which the allegedly libelous statements were part was not to contribute to any public debate, but to gain leverage against Charles and Michael in the action Behunin had filed against them. As an internal Levick email explained: "Nick [Behunin] thinks that if we are successful in turning up the heat in tarnishing the Schwab brand, Charles will be forced to settle because of the potential implications to shareholder value, regardless of whether the actual lawsuit has a leg to stand on." The communications also confirm one further purpose of the campaign. After an early conversation with Behunin, a Levick employee relayed "Nick's Goals" to those working on the project. The first entry: "I want to cause pain." The second entry: "I know this is a David and Goliath battle, but I will go to his last penny and his last breath to just cause them pain." Other entries continue to focus on Behunin's private grievances with the Schwabs. This context does not support extending the scope of section 425.16 to the statements by Behunin and the Steiner defendants. (See *FilmOn.com*, *supra*, 7 Cal.5th at p. 154; *Price*, *supra*, 195 Cal.App.4th at p. 972 ["'the focus of the speaker's conduct should be the public interest rather than a mere effort "to gather ammunition for another round of [private] controversy"'"].)

Behunin and the Steiner defendants failed to establish that Charles's libel action arises from any protected activity in which they engaged. The trial court did not err in denying their special motion to strike under section 425.16.

18

2.     *The Statements Michael Alleged Were Defamatory Were Not Made in Connection with a Public Issue*

To support their contention that the allegedly defamatory statements in Michael's action were made in connection with a public issue, Behunin and the Steiner defendants offer largely the same arguments they made in Charles's action.  The Steiner defendants again argue the statements "relate to the financial world" and "question the trustworthiness of business owners." Behunin argues that Michael and "the Suharto family" are "in the public eye" and that the allegedly defamatory statements "contain consumer information."

In the first step of the *FilmOn.com* analysis—asking whether the content of the statements implicated a public issue— many of our conclusions about the statements in Charles's action apply with equal force.  Hazy abstractions like "the financial world," "the trustworthiness of business owners," and "consumer information" are too general and distant to be the public issues implicated by the statements.  (See *Rand Resources, LLC v. City of Carson*, *supra*, 6 Cal.5th at p. 625; *Price*, *supra*, 195 Cal.App.4th at p. 972.)  And although Behunin cites a smattering of journalistic interest in Michael's investment activity to demonstrate Michael is in "the public eye," there is no evidence this interest resulted in any more than two isolated published pieces: a short business-journal profile predating the statements by some 14 years and a 215-word notice in an Australian newspaper of Michael's intended investment in the Australian company Western Mining Network.  This evidence, by its scarcity, tends to demonstrate a *lack* of widespread public interest in Michael.

19

Whether, as Behunin argues in Michael's case, the statements implicated a public issue because Tommy (and possibly Panji) Suharto's wealth and investment activities are "in the public eye" is a closer question.[9] (See *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1347 ["widespread public interest in his personal life made [Marlon] Brando's decisions concerning the distribution of his assets a public issue," and "[a]lthough [the plaintiff] was a private person and may not have voluntarily sought publicity . . . , she nevertheless became involved in an issue of public interest by virtue of being named in Brando's will"].) But again, even if the allegedly defamatory statements in Michael's action implicated a public issue, Behunin and the Steiner defendants did not address whether the statements had a "functional relationship" with "the public conversation" on that issue. (*FilmOn.com*, *supra*, 7 Cal.5th at pp. 149-150.) That is, they again ignore the second part of the *FilmOn.com* analysis, despite the fact Michael dedicates several pages to it in his brief. And considering the statements' context, including the speaker, audience, and purpose, the statements did not contribute to the public debate on any issue Behunin and the Steiner defendants have identified.

As discussed, the chuck-you.com website's "imaginative," non-factual tone and undisputed goals of obtaining leverage in a personal controversy and causing the Schwabs personal pain suggest the statements on the website did not contribute to any public debate. The same conclusion holds for the allegedly defamatory statements that appeared on Fein's blog. There is no evidence Fein wrote the post in which the statements appeared

---

[9] Behunin does not make this argument for the allegedly libelous statements in Charles's action.

20

because he thought the material was newsworthy or appealed to any interest of the public.  Rather, the undisputed evidence—emails exchanged among Levick's employees, Fein, Behunin, and Steiner—shows Fein wrote the post because Levick, on Behunin's behalf, paid him $10,000 to do it.  Levick fed Fein information it wanted to highlight for its "Chuck You Campaign."  Levick, with Behunin's assistance, "fact check[ed]," "vett[ed]," and added to the final product.  (Levick's director to Behunin:  "[D]oes Seathos still exist? Or does he need to change the target?")  Levick and Behunin's purpose?  To "put blood in the water" and make "web traffic for the Chuck You site increase significantly."  Like the allegedly defamatory statements on the chuck-you.com website, the statements on Fein's blog were thus "'a mere effort "to gather ammunition for another round of [private] controversy.""" (*Price*, *supra*, 195 Cal.App.4th at p. 972.)

Behunin and the Steiner defendants did not establish that Michael's action arises from any protected activity in which they engaged.  Therefore, the trial court did not err in denying their special motion to strike under section 425.16.

## DISPOSITION

The orders denying the special motions to strike are affirmed.  Charles and Michael are to recover their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


DILLON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.